Well, good morning. My name is Ryan Adams. May it please the court, I rise on behalf of the appellants. I'd like to reserve five minutes for rebuttal. Respectfully, we would ask the court to reverse and remand for two reasons. The first is that we believe that dismissal was premature. We believe we had a right to amend the complaint. We believe that we didn't get enough factual basis and discovery from the other side in order to have our client's case heard. The second reason is we believe that the district court... How would you amend the complaint? So I think there's a couple things, Your Honor, and that's a perfectly valid question. I would inform the court prior to, in fact, I believe it was February the 19th, there was an email exchange with opposing counsel and we had agreed that opposing counsel would submit their motion to dismiss and that after the hearing we would amend the complaint. So it was somewhat, as you can imagine, a shock to us that it was dismissed with prejudice. And so that's a couple of things. And to answer your questions directly, we would have alleged compensatory damages for AG and TF. We would have alleged those differently and more in with more specificity. And then we would have actually alleged there was a plaintiff named Nicole Lilly for whatever reason. Those things just seem to bite around the edges of the case. How would you amend with respect to the claims you allege? Did you suggest that to the district court that you could amend in that fashion? I believe we did, Your Honor, at the at the oral argument. I believe that was on May 23rd. And so there's a couple of things that we would probably change in there. One of the allegations that we made without a claim to support it, and we would support it with another claim as well, is hostile treatment based on a religious belief. And then we would allege a claim of infringement of a free right to speech. The basis for that is that a couple of the plaintiffs circulated a petition with regard to the school's policies. And the principal forced them to withdraw that petition under threat of discipline. And so we believe that that is that is an infringement. And we could plead that with more specificity because it was plugged in a paragraph. And I'd cite you to that. And it's page 27 on paragraph 92 that we make those allegations. And so I think that at the very least would be important for that to be heard. And then essentially one of the one of the other main problems with an early dismissal is that fact-finding was just simply incomplete. We didn't. Well that's by definition on a motion to dismiss there's no fact-finding. Sure. I mean that's. I think I think you're correct Your Honor. I don't mean to stop your question. But I think there's really there are certainly interesting and complex issues to discuss. But today is about procedure. And so we we know that at the motion to dismiss stage it is about a well-pleaded complaint. And we take the allegations as true. And the district court held that taking all those allegations as true there was no viable theory for relief. And so that I had a similar question to Judge Tashima's. If you you know explain more about alleged damages or whatever. I'm not sure how that gets to the issue of whether any of these theories is legally cognizable. So and I think I can get to the privacy right part of that. Because I'm sure that that that may be what the court would have questions about. But one thing I would point out is that I also would take issue respectfully with some of Judges Hernandez or with some of Judge Hernandez's opinion. He cited to a case called Dovey Boyertown that was recently denied cert. And one of the things he said on page 37 is that cisgender stress is not comparable to transgender stress. Well counsel we have over review. So it doesn't really matter what he said in passing or even not in passing. So why don't you get to the main issue here. So and I guess with in that points well taken. And I guess to finish up my thought on that is if we made allegations in the allegations were sufficient to meet Iqbal and Twombly which we believe that they were. The point was 65 pages of fact. Cisgender stress not being comparable to transgender stress is an issue of fact respectfully. And without factual development further we pled that. And we'd like to be able to explore that a little bit further. And I think that that's important for my clients. And so with respect to Title IX I think that that is a very interesting point here. And so we really go to a statutory construction analysis with text context and legislative history. And so when we look at Title IX back in 1972 it's our position and I believe that it makes sense that Congress did not consider gender identity to be synonymous with the word sex. Title IX requires something discriminatory however. And the policy as I understand it applies equally to all students of all genders. Well I think is that is that right? I mean the policy is any student may use any restroom that matches his or her or their gender identity. Right? Well so in that sense it applies across the board. So what's the discrimination? So I think that that I would agree with most of that. I think what I would probably expound on a little bit is Title IX was enacted to prevent harassment. And so we look at what the definition of harassment is in the school. What do you have to prove to prove a Title IX claim though? So you have to show that the school did not take proper steps to protect somebody from harassment or sexual harassment to the extent in this case that it interfered psychologically with the learning environment. And that's what we've pled. And you're correct we haven't had a chance to prove that yet and that's what we're we're asking to be able to do. And so I would quote. No no but what is the allegation you're making? Your allegation is that this whatever it's called. Is it the safe student policy? Something like that. That policy violates Title IX? That's correct judge and I think. Because what? Because it permits students to infringe some right of the other students? Or is it the school school district that's doing the infringement? How does it work under your claim? Sure so I think and that's a well-taken question. I think that the really interesting argument here and this is what and forgive me I'm not trying to ramble but I want to kind of tie it back here. Because what the court asked and I have a constitutional right not to share restrooms or locker rooms with transgender students whose sex assigned at birth is different from theirs. Well the constitutional right seems to me is separate from the statutory right under Title IX isn't it? Or is it the same thing? Well to a certain extent I think you're I think you're correct that it's separate. I think it's a really interesting argument when we start talking about about privacy with respect to a restroom here. Because you know when you when you get down to it and I know that my colleagues on the other side have characterized our arguments as idiosyncratic and novel. The fact is we don't believe they're novel. We believe you walk into any building and you're gonna see a separate restroom for men and women. Now what's novel is that the court has not considered this fact before and it's really it's really complicated. And if we look now even though the court denied certain Boyertown which I'm sure my colleague will get up here and talk about that. There's myriad reasons why the court will deny cert. We don't know if it was based on the fact that they thought it was a good ruling. We do know that there's a trilogy of cases they've recently taken up that will be heard at argument this fall known as Harris. And so Harris is going to deal with Title VII. And so Title VII we know from case law can be imported and exported as far as interpreting Title IX. And so we think at a minimum that it would be important for our clients to get a day in court without a motion to dismiss with prejudice. Because that's inherently a motion to dismiss with prejudice at the early stage we know is inherently disfavored under think think think it ink information resources. Well that's that's pretty clear from the Ninth Circuit case law there. And so I think what the important thing is is it really is going to turn on what the Supreme Court does with the Harris case. And so what I would get at right now is I don't know that this court today has to reach a decision on privacy rights. I don't think that they do because I think it's going to get there at the Harris case. But you're you're alleged your allegations that you want to add in repleting. What if anything will they add with respect you've now moved from Title IX to privacy in your comments. What if anything will they add that is not a right of privacy in this context. Well and that's a great question. I think probably we have to look at it from from sort of back up to kind of see and if you'd permit me. I think the question and I'll get to the direct answer to your question here. But what I would say is the question that I think the court should have asked is whether plaintiffs have a constitutional right not to share So let's take let's take transgender out of it. What what that still doesn't answer my question at all. Which is you're asking us to wait and you're asking us to allow you to replete. And I'm asking you with respect to the question whether there is or is not a right of privacy defined as you define it. Defined as the district court defined it. Defined any way at all. What will those new allegations be that will bear on the question whether there is such a right in the Constitution or not. So I think again I think a right to privacy is outcome determinative. And so the question is whether any facts at all could be pled. And so I think you know are there any case let leave alone the facts. Are there any cases that you can point to that have adopted the theory that you would espouse here? The closest one that I would have and forgive me it slipped my memory of the site to it but I believe it was in our briefs. There's a case in the Seventh Circuit where it's based under Title VII where one individual went into a female restroom at work and you know just to inform the court correctly there was physical contact he brushed up against her in the court ruled that that was sexual harassment. So we haven't alleged necessarily physical contact but what we have alleged. You've alleged a privacy right not to have to come into contact with people that you don't want to come into contact with. But so you have I'm taking your answer as there is no such case. Well I don't think that there's a case specifically on point and that would go to exactly what I would say before is because this is still such a novel issue. And well that doesn't mean we shouldn't decide it it's here. Yeah I mean I keep circling back to that. They have a Title VII case. We have a constitutional case as you have presented it. So what's there to wait for? Well and that's a fine argument your honor and what I would say is. It's not an argument it's a question. I don't understand why we would wait for a So I think if the court can find that there is no right to privacy whatsoever in a restroom no matter the factual scenario then the case is over. If the court does find that there is some right to privacy in a restroom then we need factual development and the clients need a day to come try their case. And it should be you know it'd be different if this was before a summary judgment. But to dismiss outright on a on a motion dismissed without prejudice when we had asked for leave to replead and put allegations from a plaintiff that was named but the allegations weren't included. I think that's important and we know that leave is is freely granted in the interest of justice. And so I think it would be important for my clients to have a day where they can address the issue squarely and factually. I think it's important not only for that but you know this is obviously a very very interesting issue from a from a policy perspective that would serve the court well to do factual development and make a ruling instead of just on a complaint on something that there are facts. And so if the court doesn't have any further questions I think I'd reserve the remainder of my time for rebuttal. You certainly may do that. Good morning. May it please the court. Blake Fry for the Appellee Dallas School District. The school district here did the humane thing and they simply allowed a transgender student to use the bathrooms and locker rooms that matched his gender identity. The appellants here obviously sued the school district over this decision and what the complaint asked the asked the district court to do was to issue an order that would have required the school district to keep its multi-user bathrooms and locker rooms strictly segregated by sex. Or in other words a court order requiring the school district to force transgender students into the bathrooms that do not match their gender identity. Obviously the district court here dismissed a complaint which is why we're here. The appellants believe as we've heard a little bit about in privacy and they believe in privacy and modesty between the sexes and that this should be preserved. So as a result of that they believe that the sexes should not intermingle in bathrooms or locker rooms, that members of one sex should not change or go to the bathroom in the quote presence of members of the other sex because of the quote risk of opposite sex nudity. And it's for that reason that they believe that transgender students should be forced into bathrooms that don't match their gender identity. Otherwise the appellants claim their right to bodily privacy has been infringed. The problem with this is that the appellants have completely misconceived what the right to bodily privacy is infringed when an official himself has through some sort of course of means viewed a subject, a plaintiff, in some sort of state of undress without an adequate justification. So the privacy claim here fails first of all because it's not based on an allegation that a school official himself. There are no privacy cases in the type of circumstances you're talking about. In government intrusion or are there that involve transgender persons as victims. Are there any cases that deal with that? Well so first of all all the cases discussing the right to bodily privacy involve situations where it is the official himself who has... I know that but my question is that any of them involve a transgender victim? Well the only cases involving transgender people are the cases that are similar to this case in which the plaintiffs have raised a supposed right to bodily privacy as justifying an order keeping transgender students at bathrooms. Bathrooms that match their gender identity. So the answer to my question is no? Well the answer to the question is... Or do you remember the question? The answer is that there are cases involving transgender students and there are all cases... That was not my question. My question is the type of questions you were discussing, right? In other words you said the only time this privacy has been recognized by the courts when there was what I'll call some government intrusion where a government actor you know takes some action or you know observes a victim of the opposite sex, right? That's you said the case. My question was are there any of those cases that involve a transgender victim? No, not that I'm aware of. While your train of thought has already been derailed I will derail it further and ask you what your position is on the question of allowing a repleting as apparently the parties themselves felt was appropriate. Should this have been a dismissal without prejudice to allow one more attempt at least? Well first of all the parties never agreed. Well okay leave that aside. We do normally in many cases say that unless an amendment would be entirely futile it should be permitted. Correct. First of all the opponents never moved the district court to amend to to be allowed to amend their complaint but probably most importantly they never explained to the district court and they never they they haven't explained in their opening brief and they or in their reply brief or really here at oral argument exactly what facts they would have added to the complaint which would have given them a right to the relief that they're seeking. And in fact if you look at the opening brief and this is the same argument that they made at the district court the argument is that the district court erred in dismissing the complaint with prejudice because the complaint is currently constituted states a claim for relief. So I mean it's hard to respond to your question about should the should the opponents have been given a chance to amend their complaint. Because they didn't move for it as Richard said. Because they didn't move for it and they haven't explained exactly how they would amend their complaint what sets of allegations would they add to their complaint that would ever amount to a claim? In your view is there any analytical distinction to be drawn between locker rooms where people change clothes and bathrooms where typically there are private stalls available for people to use if they want to. Well no especially not in this case where the privacy stalls that people can use because the locker rooms also contain bathrooms and so there are the typical privacy stalls that you would see and in normal bathrooms or locker rooms. But it does it does raise a point of course we have a similar case Dover's Boyertown which is recently decided by the Third Circuit in which similar sorts of allegations were made and those concern again those allegations concern bathrooms and locker rooms and in the decision or made no distinction between the difference between bathrooms and locker rooms. I would also point out that one of the one of the points that the court made in that case is that the none of the students were coerced in any way to undressing in the presence of the transgender student. They were given multiple options if they had privacy concerns and that's just the same as what we have here. If students had privacy concerns they could change or go to the bathroom in privacy stalls. There was a if that didn't suffice to meet their privacy concerns they could change go to the bathroom in a bathroom that was in the teacher's lounge. They could change in the nurse's office and so on. The the ultimate problem with the complaint here is that the legal theory supporting the relief that the plaintiffs the appellants are asking for is fatally flawed. They're seeking a court order requiring the school district here to force transgender students into the bathroom that does not match their gender identity and the fact is that there's no set of facts or there's no legal theory that would entitle the appellants to that relief that they're seeking. In other words relief that when in itself discriminate against transgender students. And I can see that my time's up so unless there's any further questions. I don't believe so and I think next we hear from Mr. Arkels if I pronounce that correctly I don't know. May it please the court my name is Gabriel Arkelis and I represent Appellee Basic Rights Oregon. Just to briefly follow up on Judge Tashima's question and I am aware of some cases not cited in the complaint where there was a transgender victim of a privacy violation but in very different contexts. Meriwether v. Faulkner comes to mind which was a prison case involving a public strip search. I think there's also the Ticoon v. City of New York. Your Honor, the district court was right when it held that the school district was free to permit a transgender boy to use the boys restroom and locker room. The mere presence of a transgender person in these facilities does not infringe on anyone else's rights and it's because there's no legal basis to the relief that they are seeking that their complaint was properly dismissed with prejudice. There's no fundamental constitutional right to exclude transgender boys from boys facilities or transgender girls from girls facilities and it is not an act of sexual harassment for a transgender person to use these facilities the same ordinary way and for the same ordinary reasons that other people do. School district also had no obligation to abide by the even if some of those preferences are based and sincerely held religious beliefs. What the school district did was choose to treat a vulnerable young person fairly and equitably. For transgender people not being permitted to use the restroom or the locker room that is consistent with our gender identity can be very harmful as numerous courts have found around the country and as I think Miki also pointed out it sends a message there is something wrong with a student that they can't be permitted to be with their peers and it can cause increased risk of bullying not finishing school and even suicide. What the school district did here was make the right choice and it certainly didn't violate any law. I won't belabor the privacy point because I believe my needs to be some sort of a violation where where a school district or a government official compels exposure of the unclothed body. Here nobody was compelled to expose their unclothed body. Students did have to change for gym but they weren't required to use the communal areas to do that. They could have used the privacy stalls within the main locker room or any of the single occupancy facilities. Without compelled exposure there's no privacy violation. What the appellants are really looking for is acknowledgement of a new fundamental right, a right to exclude transgender people from these facilities. But that is not a right there is any legal tradition of in this country. In fact it's only been very recently that there have been some attempts to exclude transgender people from these facilities considered in legislatures and they have almost universally failed. To say that that is something that is implicit in the concept of ordered liberty without which neither liberty nor justice would exist is simply unsupported. As to the sexual harassment claim there's no court that has ever found that is an act of sexual harassment for a transgender boy to use a boy's facility or a transgender girl to use a girl's facility. Finding that would require finding that simply being transgender transforms an otherwise innocent act into an act of sexual harassment. I believe that the case that my colleague of the appellants was referring to was Lewis v. Triborough Bridge and Tunnel Authority which is a case where men entered a locker room while women were changing, looked at them, made lewd remarks and crowded the entrance so that the women had to brush past them. When the women complained about this conduct their supervisor used gender-based epithets to address it. In allegations like that here the appellants absolutely would have stated a claim for sexual harassment. But they have not alleged anything approaching that sort of conduct. They have simply alleged that a transgender boy has changed for a gym in a locker room and has used the toilet in a restroom. Lewis' Title 7 case? The Title 7 case? Yes. So you think when you say the it's not in the Title 7 what are you saying like Title 9 offers the same remedy as Title 7? Generally yes sexual harassment is cognizable both under Title 7 and Title 9 yes. I mean the school district needs to be aware and act with deliberate indifference to acts of sexual harassment to be held liable under Davis. But yes generally there needs to be for there to be harassment there has to be some sort of affirmative act directed at another person because of their sex that is objectively offensive. And there can be sexual harassment between people of the same sex or sexual harassment between people of the different sex. If just going into a locker room to change for gym is sexual harassment there's no reason why it would be for a transgender person but not for other people. But there's a are you saying there's a Title 9 case that Lewis recognizes under Title 7? Well so Davis in the Supreme Court acknowledged in in that case there was conduct where a boy student had been making lewd remarks attempting to touch and forcibly grope a female student and ultimately pled guilty to sexual battery. And the girl student had complained multiple times and the school district took no action to stop the ongoing sexual harassment. So yes if there were acts like this they could state a claim for sexual harassment. So what Davis was a criminal case? No it was a Title 9 case. And it was a Title 9 case where the the person the harasser happened to also have pled guilty to criminal conduct. And as the court knows the only courts to have considered similar claims to these have rejected them and the Northern District of Illinois and the Bonk Third Circuit. And this and this student safety plan was in place for over two years before the appellants brought their case and again they could allege no conduct that was harassing. It was objectively offensive or directed at another person because of their sex. And as the other claims this court has made clear in Fields v. Palmdale school district that parents have no right to dictate school policy. And under Employment Division v. Smith because the school district's policy here is neutral and generally applicable as to religion it's subject only to rational basis review. Thank you counsel you've used your time we appreciate that. And we'll hear last from Mr. Fan. Good morning Your Honor. May it please the court Dennis Fan on behalf of the United States. The district court concluded that these plaintiffs lacked standing to bring the federal government into this action against their school district and plaintiffs do not argue in their opening brief anywhere in their opening brief that that dismissal was incorrect. This court should deem the claims against the federal government abandoned and in any event plaintiffs here in fact do lack standing to sue the federal government. If this court doesn't have questions on those two points we're happy to cede our time and rest on our briefs. I don't. Either of you want to talk more? I'm happy to cede my time to any of them. We also urge this court to affirm. Thank you. You have quite a bit of rebuttal time remaining. Thanks Your Honor I don't know if I'll use all of it but I will be happy. It's not required. So I think what I would do first is address two things that opposing counsel mentioned. First of all I don't think it's true that all courts have rejected these arguments. There's the Palantine case out of Illinois where a motion to dismiss was made and it is true that a couple of the and although that case was dismissed by the plaintiffs after that ruling it still stands that claims were made and claims were proffered and claims were pushed on from the motion to dismiss stage and I think that that's an important distinction to make here. I would also address the Fields case. I think that is a case that I think over the last 12 years now has been stretched a little bit. Opposing counsel says that parents don't have the right to have a say in school policy. What the Fields case says is that parents don't have the right to have a say in curriculum. Those are two very different things. It's a it's non-logical why parents would not have a say in school policy where we have school boards but they can come and indeed in this case they did come at the school board and in the end of 2015 in December and January of 2016 and made their voice known. So I think to say that parents don't have a right to have a say in policy is baseless. I would say as to what we could amend in facts for an amendment would be I'd like to do discovery on the layout of the locker room. Did you move for permission to file an amended complaint? We did not your honor and the reason we did not do that is because of expediency and I we in litigation I guess typically is we had agreed that we would amend and then we thought what we would do to preserve judicial resources is wait until the court issued its ruling and then file our amended complaint. But you had a right under the rules to file one amended complaint. Well I think at that point we had conferred with opposing counsel I think it was attorney class on the 19th and there were some some conferrals and concessions back and forth and she said we'll go ahead and file our motion dismiss and we said that's no problem we'll plan on amending it afterwards. Whatever the strategic reasons for it you didn't file an amended complaint once which you could have done and you didn't ask for permission to do it and yet you're coming and asking us to tell the district court to let you do something that you didn't ask the district court for in the first instance. I think if my memory serves me correctly we did ask the district court at our hearing we said we would be happy to amend and we went over some of the stuff so I think what we were trying to do I mean in good faith was not clog judicial resources and not file you know more pleadings that needed to be filed and it was kind of typical as a matter of course because we thought we you know come to an agreement with Miss Plass and we thought hey if the court issues a ruling here and says no you need to change some of this stuff we'll file it all at the same time as opposed to having a more voluminous record than we already have. So that was the rationale behind that judge. Counsel under your theory of the case could a female student object to a transgender boy being in the locker room? I want to make sure we define our terms here so when you say transgender boy can you... So someone who is born biologically female but identifies as a boy could a could a student who is transgender student being in a locker room? In her locker room? Is that what you're asking? Yes. I don't believe she could I don't believe she'd have a basis for that. And even though she might feel as as uncomfortable as the plaintiffs in your case? I believe what we've pled is the difference in the biological sex versus the perceived gender identity so I think that's that's the issue that I would that I would answer the court with with respect to that and so I think what I what I would say about amending as far as facts go is I think it'd be important to know there's there's been some reference about stalls being in the locker room you know and other stalls being in the bathroom I I would like to explore that on behalf of my clients at Discovery to figure out exactly what that layout setup is and I think that's the very definition of in the interest of justice to allow Discovery to happen so we could potentially plead claims that would satisfy the district courts analysis and I think that that's important here. I believe the last thing that I would say and I would leave you with is the policy that's in place right now is very open-ended and it's open-ended because there's no definition as to what transgender means there's no definition to what in transition means and so I think you know with a policy that loose in place it does create some genuine questions as to safety for as they're saying okay it's not about you know disliking anybody for their identity it's about making sure everybody is safe in a school and that is what is important to my clients and so I think without those definitions in that policy what the school has essentially done. So is it your position that if the policy were to add a very careful and lengthy definition of what it means to be transgender your clients would be fine with it because it's really clear? Well I think that that's a tough question. That's a yes or no question. I can't answer yes or no your honor because I haven't talked to my clients about it because it's hypothetical and I don't know what definition it would be. Well you're the one making the argument that the problem with the policy is that it doesn't define sufficiently so my question to you is so what is that is fixing that sufficient to satisfy your claims? I think and I'm sorry I didn't mean to cut you off I think it depends on how you would fix it right because there's clearly an organ and I'm not overly familiar with the process but there's clearly a defined way to change your birth certificate right there's clearly a defined way to do all this stuff so with respect to the school there doesn't appear to be and so yeah I'm not sure what that change would look like or what that definition would look like but right now I think the position is it's so let me ask you this is similar to what Judge Owens asked you but let's say that a transgender student has gone through the process the legal process to change let's say that transgender boy is now legally a boy as well as identifying as a boy does that make any difference to you does that entitled to use the boys restroom? I think I think logically I think that would be correct I think if they're biological sex if they're if they're but it isn't their biological sex it's their birth certificate sex it would be at that point I guess the term for it would be their physical sex at that well it might or it might not be I don't know what I also have not studied the Oregon statute on this but let's assume that the statute doesn't require surgery in to obtain a revised birth certificate but the person is able to obtain that do they get to go by their birth certificate or are you gonna strip search them so that you know which bathroom they need to use? So I see that I'm out of time if I might I don't think we would strip search anybody first of all your honor but I would say that just changing their birth certificate I don't think would would create the right from somebody that has a different biological sex to use the bathroom well it isn't it's the opposite it's whether you can prevent them from whether you have a right to prevent them not whether they have a right to do it well and I think you know maybe that's a little bit of a double standard so we're saying prevent them from coming in but then what does that do with the other students rights that are already in the bathroom and so that's kind of where the the conflict is I think and based on where the case law is at right now it's very unclear where that line is so if there's no other questions I would leave the court. Thank you very much the case just argued is submitted we appreciate very much the helpful arguments of all counsel in this challenging case and we are adjourned for this morning's session.
judges: Tashima, Graber, Owens